**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

ROBERT EARL TOWNSEND,

        Petitioner,

v.                           Case Number: 04-CV-74846

DOUG VASBINDER,

        Respondent.
                            /

**ORDER DISMISSING PETITION IN PART AND DIRECTING PETITIONER
TO SHOW CAUSE WHY REMAINING CLAIM SHOULD NOT BE DENIED**

Petitioner Robert Earl Townsend, a state inmate currently incarcerated at the G. Robert Cotton Correctional Facility in Jackson, Michigan, has filed a petition for a writ of habeas corpus.[1] Petitioner, who is serving a life sentence for second-degree murder, challenges changes made to Michigan's parole scheme after his conviction. The court finds that all but one of Petitioner's claims are subsumed by a class-action complaint pending before another judge in this district and dismisses the duplicative claims. The court orders Petitioner to show cause why his remaining claim, regarding resentencing, should not be denied.

**I. BACKGROUND**

**A. Procedural History**

Following a jury trial in Jackson County Circuit Court, Petitioner was convicted of second-degree murder. On June 21, 1968, Petitioner was sentenced to life

---

[1]The petition was filed *pro se*. The Court recently appointed counsel to represent Petitioner.

imprisonment.

Petitioner filed a direct appeal of his conviction, several collateral appeals in state court, and a habeas petition in federal court. All of these challenges proved unsuccessful.

In 2003, Petitioner filed a motion for relief from judgment in the trial court challenging the Michigan Parole Board's refusal to release him on parole. Petitioner presented the following claims:

> I. Where, in a manner wholly unforeseeable when defendant committed his 1968 offense, found guilty by jury trial, and sentenced, the parole board has construed the "lifer law" (M.C.L. 791.234) to make a parolable life term the functional equivalent of a sentence of mandatory life without parole, continuing execution of defendant's life sentence violates the state and federal constitutional prohibitions against ex-post-facto laws and the state and federal due process guarantees, and re-sentencing is the only remedy available.
>
>> A. Where the meaning of a parolable life term, as generally understood in 1968, the Board's retroactive application of its current policy that "life means life" now that defendant has served 36 years has in fact increased defendant's punishment in violation of this state and federal ex post facto clauses.
>>
>> B. Where the sentencing court relied on what was then accurate information about lifers' actual prospects for parole, the parole board's subsequent reinterpretation of the lifer law makes Mr. Townsend's continuing service of his life sentence fundamentally unfair.
>>
>> C. The current parole board's policy that "life means life" violates the reasonable expectations on which his jury trial found him guilty on, and therefore deny Mr. Townsend the due process of law guaranteed by the state and federal constitutions.
>>
>> D. Re-sentencing is appropriate where defendant meets the requirements of M.C.R. 6.508(D), parole board policies and practices have rendered defendant's sentence invalid, and his inability to obtain judicial review of those policies makes re-sentencing the only remedy available.

2

E. At the time of sentencing, by court rule, the PSI was not disclosed to defendant and therefore, defendant was unable to challenge the erroneous, inaccurate information in the PSI.

The trial court denied the motion for relief from judgment and a subsequent motion for reconsideration. *People v. Townsend*, No. X6-430-67 (Jackson County Circuit Court), 9/3/03 Opinion and Order, 9/22/03 Order Denying Motion for Rehearing. Petitioner's applications for leave to appeal the trial court's denial of his motion for relief from judgment were denied by both Michigan appellate courts. *See People v. Townsend*, No. 251336 (Mich. Ct. App. March 11, 2004); *People v. Townsend*, No. 125961 (Mich. Nov. 29, 2004).

Petitioner then filed the pending petition for a writ of habeas corpus raising the same claims raised in state court. He subsequently withdrew his final claim, regarding the presentence information report.

## B. Class-Action Complaint

Shortly after Petitioner filed his habeas petition, a class-action complaint was filed in this district under 42 U.S.C. § 1983, alleging that post-1992 changes to Michigan's parole scheme violate the class members' rights under the *Ex Post Facto* and Due Process Clauses. *Foster-Bey v. Rubitschun*, No. 05-71318. The class was certified on October 25, 2005.

The *Foster-Bey* class is defined as follows:

All parolable lifers in the custody of the Michigan Department of Corrections who committed crimes (for which they received a parolable life sentence) before October 1, 1992, and whose parole the "new" parole board has denied, passed over, expressed no interest in pursuing, or otherwise rejected or deferred. . . . For purposes of this class definition, the "new" parole board refers to the board that came into existence pursuant to the 1992 statutory changes in parole, and that gradually took over from the old board in the period from c. 1992 to 1994.

3

*Foster-Bey*, slip op. at 3. Petitioner was sentenced in 1968. Therefore, he is a member of the class.

The class was certified under Fed. R. Civ. P. 23(b)(2). Rule 23(b)(2) authorizes "'mandatory' class actions under which potential class members do *not* have an automatic right to notice or a right to opt out of the class." *Reeb v. Ohio Dept. of Rehabilitation and Correction,* 435 F.3d 639, 645 (6th Cir. 2006) (emphasis supplied); *see also* Manual for Complex Litigation (Fourth) § 21.311 (2004) ("[T]here is no right to request exclusion from Rule 23(b)(1) and (b)(2) classes.). The Notice of Class Certification informs prisoners that the rights of class members "will automatically be covered by the lawsuit." The Notice of Class Certification does not provide any opt-out provisions for plaintiffs.

In *Foster-Bey*, the plaintiffs challenged several changes to parole procedures impacting prisoners serving parolable life sentences. Plaintiffs argued that the changes violated the *Ex Post Facto* and Due Process Clauses. Defendants moved to dismiss the complaint. Judge Edmunds granted Defendants motion to dismiss the due process claim, but denied the motion as to plaintiffs' *ex post facto* claim. *See Foster-Bey v. Rubitschun*, 2005 WL 2010181 (E.D. Mich. Aug. 18, 2005). The matter was subsequently reassigned to the Honorable Marianne O. Battani and extensive discovery was conducted.

On October 23, 2007, Judge Battani issued an Opinion and Order Granting Plaintiffs' Motion for Summary Judgment and Denying Defendants' Motion for Summary Judgment. Judge Battani held that the cumulative impact of several factors impacting consideration for and release on parole served to significantly disadvantage the class

4

and violated the *Ex Post Facto* Clause. The appropriate relief has not yet been determined in that matter and the parties are currently in the process of submitting proposed judgments.

## II. DISCUSSION

### A. Claims Subsumed by Class Action

The class-action plaintiffs argued that changes in Michigan's parole regime from 1992 to present have: (i) significantly altered their chances of being released on parole, thereby retroactively increasing their punishment in violation of the *Ex Post Facto* Clause; and (ii) violated their rights under the Due Process Clause because they were sentenced based upon inaccurate information where their respective sentencing judges believed less time would be served in prison under a life sentence than a long indeterminate sentence. The claims presented in Petitioner's habeas petition are essentially identical to those presented in the class-action lawsuit, except that Petitioner seeks relief under the habeas statute and the class action plaintiffs seek relief under § 1983.[2]

The Sixth Circuit Court of Appeals generally disfavors allowing a class-action plaintiff to pursue an individual action which is duplicative of the class action. In *Groseclose v. Dutton*, 829 F.2d 581 (6th Cir. 1987), the Sixth Circuit held that a district court erred in granting relief to a class of death-row inmates when members of the death-row class were also members of a larger, previously-filed class action which raised the same claims raised by the death-row inmates. The Court reasoned:

---

[2]In addition to the different statutes under which Petitioner and the class-action plaintiffs seek relief, Petitioner seeks a type of relief not sought by the class-action plaintiffs – resentencing. The court will discuss that request for relief below.

5

> To allow two or more district judges to issue directions to prison officials simultaneously would be to create . . . an "inefficient" situation, fraught with potential for inconsistency, confusion, and unnecessary expense.

*Groseclose v. Dutton*, 829 F.2d 581, 584 (6th Cir. 1987). *See also Henderson v. Rubitschun*, 2007 WL 1648932, *2 (E.D. Mich. June 5, 2007) (dismissing a civil rights complaint filed by a plaintiff who is a member of the *Foster-Bey* class and whose complaint presented legal issues identical to those raised in *Foster-Bey* and who sought relief identical to that sought in *Foster-Bey).*

The court must determine whether Petitioner's claims are subsumed by the class action of which he is a member, and, therefore, not properly considered by this court. As noted, the class action was filed under 42 U.S.C. § 1983, while Petitioner's petition is filed under 28 U.S.C. § 2254. Although the actions are filed under different statutory authority, except for Petitioner's request for re-sentencing, there is no practical difference between the claims raised and relief sought in the two cases. In addition, the Sixth Circuit has not recognized any meaningful difference between filing these types of claims under § 1983 and § 2254, allowing similar claims to proceed under either statute.[3] With the exception of the request for resentencing, the relief sought in the two matters is identical and may be afforded under either § 1983 or § 2254.

The court concludes that permitting Petitioner to proceed with claims encompassed within the class action would create "an 'inefficient' situation, fraught

---

[3]*Michael v. Ghee*, 498 F.3d 372 (6th Cir. 2007) (involving a class-action petition challenging Ohio's parole scheme on similar grounds which proceeded under § 1983); *Alexander v. Birkett*, 228 Fed. App'x 534 (6th Cir. 2007) (a habeas petition challenging retroactive changes in Michigan's parole policy; dismissed on procedural grounds); *McGruder v. Renico*, 58 Fed. App'x 111 (6th Cir. 2003) (denying habeas petition challenging parole policy on grounds that it violated the *Ex Post Facto* clause).

potential for inconsistency, confusion, and unnecessary expense." *Groseclose*, 829 F.2d at 584. Therefore, Petitioner's *ex post facto* and due process claims shall be dismissed because they are duplicative of and have been subsumed by the claims asserted in the class action.[4]

### B. Resentencing Claim

The court must consider whether to proceed on Petitioner's unique claim for relief: that he be resentenced. Petitioner asks the court to direct the state court to resentence him in accordance with what he argues was the intent of the sentencing judge at the time. Petitioner claims that the sentencing judge, Hon. Gordon W. Britten, imposed a sentenced of life imprisonment but in reality "wanted" the sentence to be "no more than ten to twelve years." (Pet.'s Br. at 1.)

In *Crawford v. Bell*, 599 F.2d 890 (9th Cir. 1979), the Ninth Circuit Court of Appeals addressed the prudence of proceeding on a class member's discreet individual claim which is not encompassed within the larger class action. In *Crawford*, the plaintiff

---

[4]The court is aware that Petitioner's habeas petition was filed before the class-action complaint and mindful that, when faced with actions involving nearly identical parties and issues, filed in two different courts, the first-filed rule generally favors proceeding to judgment in the first-filed action. *Zide Sport Shop of Ohio, Inc. v. Ed Tobergte Associates, Inc.*, 16 Fed. App'x 433, 437 (6th Cir.2001). However, "[d]istrict courts have the discretion to dispense with the first-to-file rule where equity so demands," such as where "extraordinary circumstances" are presented. *Id.* The court finds that extraordinary circumstances present themselves in this case. Although Petitioner's petition was filed prior to the class-action complaint, the issues in the class action were substantially developed by the time the answer and Rule 5 materials were received in this case. In addition, the class members have already received a favorable ruling from a judge in this district. Proceeding to judgment on the duplicative claims would create a risk of the issuance of two competing judgments. Further, Petitioner as a class member will benefit from the skillful representation of the clinical law program at the University of Michigan, which can offer expertise and resources that might otherwise be unavailable to him.

7

was a member of a prisoner civil rights class action challenging the conditions of confinement in state prison, as well as the plaintiff in an individual civil rights action. The class-action complaint asserted various constitutional and statutory violations arising from overcrowding at the prison facility. Crawford's individual action alleged the same violations related to overcrowding, but also attacked food safety at the facility and the availability and adequacy of legal resources. The district court dismissed Crawford's individual action. The Court of Appeals held that the district court was correct in dismissing those portions of the complaint which were duplicative of the class action, but, further held that the district court erred in dismissing the allegations which went beyond the allegations and relief prayed for in the class action. *Id.* at 892-93. The court reasoned that dismissing claims and requests for relief not encompassed within the class action would deprive the plaintiff of his right to litigate those claims. *Id.*

The court finds the reasoning in *Crawford* persuasive and finds adjudication of Petitioner's request for resentencing will not risk inconsistent judgments or create needlessly duplicative litigation. Thus, the court is free to address this claim. For purposes of this analysis, the court will assume the correctness of Judge Battani's ruling on the *ex post facto* issue and consider whether, given this *ex post facto* violation, Petitioner is entitled to resentencing.[5]

In support of his claim that the sentencing judge, now retired, intended him to serve only ten to twelve years, Petitioner relies on numerous letters and affidavits provided by the sentencing judge. In these communications, the judge pointed out that

---

[5]The court observes that resentencing would likely, as a practical matter, mean release for Petitioner, as he has already served a lengthy term of years.

8

the victim was about fifty years old and lived in an apartment adjoining Petitioner's. There was evidence, the judge noted, that she had been drinking on the night she was stabbed to death by Petitioner. (1/31/02 Letter.) In a later letter, the judge additionally explained that there was a "confrontation" between Petitioner and "the woman" after which Petitioner left the apartment, met a friend, and later returned to the apartment where they "removed a knife" after "viewing the deceased" and took some money and jewelry "to make it look like a robbery . . . gone awry." (10/14/02 Letter.) The judge stated, somewhat cryptically, that Petitioner "was not charged with felony murder as he would have had the authorities [sic] evidence that the killing grew from a robbery," *Id.*, and expressed the hope that this explanation would "clear[ ] up any misconceptions concerning the . . . event." *Id.*

Later still, the judge further averred that he had "recently come into information" [sic] apparently not available at the trial indicating that the crime may have been less serious than murder since "it has come out that" the deceased had assaulted Petitioner in an effort to have a sexual encounter. (Undated letter to Gov. Engler.)[6] In reviewing this material, which includes copious correspondence between Petitioner and the judge, it appears to this court that Judge Britten's argument for a reduced period of incarceration some thirty years post-sentence is motivated less by an attempt to enforce a sentence he originally intended to impose, and more by a revised understanding of the nature of the crime based upon later-acquired information.[7] Whatever may be the

---

[6] It seems fairly obvious that the only source of such new information that had "recently" "come out," given the death of the victim, could be Petitioner himself.

[7] The judge's apparently revised view of the case appears to have been informed in part by some antipathy to the victim. The court infers that Petitioner alleged to Judge

9

merit of Judge Britten's point of view, and without reference to such later-acquired information, Petitioner asserts that a mere ten to twelve years of incarceration was the gist of Judge Britten's intention at the time of sentencing, and requests that he be resentenced in accord with the judge's present argument.

---

Britten – and Judge Britten then repeated to prison officials and others in his correspondence – the details of Petitioner's claim that the deceased aggressively, even assaultively, sought a sexual liaison with him. (Undated Letter to Gov. Engler) ("the woman . . . made a physical assault on [Petitioner] for sex . . . .")

    The judge described the 50-year-old victim as "elderly," *id.*, at least from Petitioner's perspective, noting that she was "ten years older than [Petitioner's] mother." (1/31/02 Letter). The judge thought it important to note that she was wearing "only a shorty nightgown," (*id.*), when she was attacked and stabbed to death. Also, as stated earlier in the body of this Order, Judge Britten hinted that the deceased was inebriated. There is some confusion on this point, though, because in his 1/31/02 letter he said that she "had a blood alcohol content of .018," which would indicate almost no intoxication worth mentioning, *see* Mich. Comp. Laws § 257.625(b) (defining operating a vehicle while intoxicated as "an alcohol content of 0.08 grams or more per 100 millileters of blood"), but later, in his 9/14/02 letter, said that the alcohol content was "0.18," which would ordinarily indicate substantial impairment. *Id.*

    Judge Britten specifically indicated his belief that all these alleged "recent[ ]" facts – in essence, an aggressive sexual overture to a younger man made by an older, possibly intoxicated woman wearing a nightgown – could constitute what Michigan would accept as "adequate or reasonable provocation," for an intentional killing "under the influence of passion," See *Maher v. People*, 10 Mich. 212, 219 (1862), to mitigate an intentional homicide to manslaughter. (5/2/02 Letter.) The *Maher* court described manslaughter in this way:

> "[I]f the act of killing, though intentional, be committed under the influence of passion or in heat of blood, produced by an adequate or reasonable provocation, and before a reasonable time has elapsed for the blood to cool and reason to resume its habitual control, and is the result of the temporary excitement, by which the control of reason was disturbed . . . then the law, out of indulgence to the frailty of human nature . . . regards the offense as of a less heinous character than murder, and gives it the designation of manslaughter.")

10 Mich. at 219. The court is frankly dubious about the judge's suggestion of manslaughter founded on such facts as these for the provocation.

Based upon the record before the court,[8] it appears that re-sentencing is not warranted in this case. First, in the many letters and affidavits of the sentencing judge, the judge repeatedly states that, at the time he sentenced Petitioner, it was his understanding "that [Petitioner] would be *eligible* for parole after ten years under the Department of Corrections jurisdiction." (9/30/03 Affidavit of Gordon W. Britten, Pet. Ex. 18) (emphasis added); *see also* 5/2/02 Letter from Judge Britten to Michigan Parole Board, Pet. Ex. 1 ("At the time of sentencing it was understood by all concerned that [Petitioner] would be *eligible* for a parole hearing after ten years.") (emphasis added). However, merely being *eligible* for parole is quite different from being *release*d to parole. Indeed, in another letter he specifically corrected what must have been an earlier attempt by Petitioner to attribute to the judge a prediction – or even a guarantee – that parole would be granted: "I did not state you would be paroled after ten years as you indicated in your letter." (9/16/03 Letter.) Judge Britten noted in yet another letter that he then supported Petitioner's release on parole only conditionally, i.e., "if his prison record does not show that he is a menace to society," and commented in the same letter that in the preceding thirty years, "I may have objected to earlier parole release, I do not remember." (5/2/02 Letter.)

It appears that Petitioner received approximately fifty misconduct tickets over the course of one three-year period, about one every three weeks on average. Thus, there

---

[8]It appears that a transcript of Petitioner's sentencing is not available because it was either never transcribed or not retained. In an affidavit dated October 22, 2003 and attached as exhibit 22 to the habeas petition, the sentencing judge states that, in 1968, a transcript of sentence was not prepared as a matter of routine. In addition, in a 2002 letter to Petitioner from Judge Britten, attached as exhibit 21 to the habeas petition, the judge indicates that the County Clerk could not locate a copy of the sentencing transcript.

are at least some indications that, in addition to Petitioner having committed the murder, his conduct while incarcerated may not support a decision to release him on parole. Moreover, even though he has not been *released* on parole, the record supports a finding that he has, in fact, been *considered* for parole in approximate accordance with the time period for such consideration that was apparently anticipated by Judge Britten. Indeed, his interviews aimed at possible parole began in or about August, 1975, (Pet. Br. at 1.), almost twenty years before the alleged sea-change in parole consideration took effect and on which Petitioner bases this claim. Petitioner's argument that his consideration for parole was rendered essentially meaningless given the parole board's "life means life" policy will be addressed in the class action.

Given that it appears Petitioner has been considered for parole approximately as anticipated by Judge Britten and that Petitioner's prison record does not obviously support his release on parole, the record before this court does not appear to support an order requiring Petitioner's resentencing. Therefore, the court will require Petitioner to show cause why his resentencing claim should not be denied.

### III. CONCLUSION

IT IS ORDERED that, with the exception of the re-sentencing claim, all claims raised in the petition are DISMISSED.

IT IS FURTHER ORDERED that Petitioner show cause by **January 31, 2008**, why the re-sentencing claim ought not be denied. Respondent shall file a reply to Petitioner's response to this Order by **February 14, 2008**.

        s/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated: December 19, 2007

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, December 19, 2007, by electronic and/or ordinary mail.

        s/Lisa G. Wagner
Case Manager and Deputy Clerk
(313) 234-5522