**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

ROBERT EARL TOWNSEND,

        Petitioner,

v.                                     Case No. 04-CV-74846

DOUG VASBINDER,

        Respondent.
                                       /

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

Petitioner Robert Earl Townsend, a state inmate currently incarcerated at the G. Robert Cotton Correctional Facility in Jackson, Michigan, filed a petition for a writ of habeas corpus.[1] Petitioner, who is serving a life sentence for second-degree murder, challenges changes to Michigan's parole scheme.

On December 19, 2007, the court issued an Order dismissing all but one of Petitioner's claims because they were subsumed by a class-action complaint pending before another judge in this district. (*See* 12/19/07 "Order Dismissing Petition in Part and Directing Petitioner to Show Cause Why Remaining Claim Should Not Be Denied" ("Show Cause Order")). The court ordered Petitioner to show cause why his remaining claim, that he be resentenced, should not be denied. Petitioner, through counsel, has filed a "Brief in Response to the Show Cause Order" and Respondent has filed a "Reply in Opposition to Petitioner's Response to Order to Show Cause." The court, having carefully reviewed Petitioner's Brief and the Reply in Opposition, concludes that

---

[1]The petitoin was filed *pro se.* On December 12, 2007, the Court appointed the Federal Defender Office to represent Petitioner.

Petitioner is not entitled to habeas relief and the court will therefore deny the petition for a writ of habeas corpus.

## I. BACKGROUND

The court set forth, in detail, the procedural history of this case in its Show Cause Order. The court, therefore, provides only a short summary of the relevant history here. Petitioner filed a motion for relief from judgment in Jackson County Circuit Court challenging the Michigan Parole Board's refusal to release him on parole claiming, *inter alia*, that he was entitled to resentencing because parole board policies and practices violated the *Ex Post Facto* Clause and rendered his sentence invalid. The circuit court denied Petitioner's motion. *People v. Townsend*, No. X6-430-67 (Jackson County Circuit Court), 9/3/03 Opinion and Order. Petitioner's applications for leave to appeal the trial court's denial of his motion for relief from judgment, in which he again raised the claim for resentencing, among other claims, were denied on appeal. *See People v. Townsend*, No. 251336 (Mich. Ct. App. March 11, 2004); *People v. Townsend*, No. 125961 (Mich. Nov. 29, 2004).

Petitioner then filed the pending petition for a writ of habeas corpus. Shortly after Petitioner filed his habeas corpus petition, a class-action complaint was filed in this district under 42 U.S.C. § 1983, alleging that post-1992 changes to Michigan's parole scheme violate the class members' rights under the *Ex Post Facto* and Due Process Clauses. *Foster-Bey v. Rubitschun*, No. 05-71318. The class was certified on October 25, 2005, and Petitioner is a member of the class. The class-action plaintiffs' due process claim was dismissed, *Foster-Bey v. Rubitschun*, 2005 WL 2010181 (E.D. Mich. Aug. 18, 2005), but the class-action plaintiffs were granted summary judgment on their

2

claim that the changes to Michigan's parole scheme violated the *Ex Post Facto* Clause. *See* 10/23/07 Opinion and Order (Battani, J.). Recently, a "Declaratory Judgment and First Remedial Injunctive Order" ("Injunctive Order") was issued in the class-action suit. (*See* 2/7/08 Order.) The Injunctive Order requires defendants to provide "prompt personal parole review of the plaintiff class, subject to the laws, policies, procedures, and applying the standards, that were the norm for the decades before 1992." (2/7/08 Order at 2.) The Injunctive Order sets a time frame and methodology for accomplishing these parole reviews as quickly as possible.

## II.  ANALYSIS

### A.  Standard of Review

28 U.S.C. § 2254(d) imposes the following standard of review on federal courts reviewing applications for a writ of habeas corpus:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d). Therefore, federal courts are bound by a state court's adjudication of a petitioner's claims unless the state court's decision was contrary to or involved an unreasonable application of clearly established federal law. *Franklin v. Francis*, 144 F.3d 429 (6th Cir. 1998). Additionally, this court must presume the correctness of state

court factual determinations. 28 U.S.C. § 2254(e)(1)[2]; *see also Cremeans v. Chapleau*, 62 F.3d 167, 169 (6th Cir. 1995) ("We give complete deference to state court findings unless they are clearly erroneous").

The United States Supreme Court has explained the proper application of the "contrary to" clause as follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . .
>
> A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

*Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).

With respect to the "unreasonable application" clause of § 2254(d)(1), the United States Supreme Court held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause when "a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." *Id.* at 409. The Court defined "unreasonable application" as follows:

> [A] federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable. . .
>
> [A]n unreasonable application of federal law is different from an incorrect application of federal law. . . . Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ

---

[2]Section 2254(e)(1) provides, in pertinent part:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.

4

> simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

*Id.* at 410-11.

When "no state court addresses a properly raised federal claim," a federal court is "no longer bound by AEDPA's deferential standard of review and instead review[s] the claim de novo." *Williams v. Haviland*, 467 F.3d 527, 530 (6th Cir. 2006).

### B.  Resentencing Claim

The single claim remaining for consideration on habeas review is Petitioner's claim that, given Judge Battani's finding that the post-1992 changes to Michigan's parole scheme violated the *Ex Post Facto* Clause, he should be resentenced in accordance with what he characterizes as the sentencing judge's original intent.

The success of the class-action plaintiffs' *ex post facto* claim does not entitle Petitioner to habeas corpus relief. The standard of review for habeas petitions is much different than that for § 1983 claims. On habeas review, a federal court must consider whether a state court decision was "contrary to, or an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d)(1). The AEDPA's restrictive standard of review "requires the federal courts to give considerable deference to state-court decisions." *Ferensic v. Birkett*, 501 F.3d 469, 472 (6th Cir. 2007) (citation omitted). "AEDPA essentially says to federal courts, [h]ands off, unless the judgment in place is based on an error grave enough to be called unreasonable." *Wilkins v. Timmerman-Cooper*, 512 F.3d 768, 774 (6th Cir. 2008) (internal quotation omitted). In contrast, a court reviewing a claim for relief under § 1983 is not deferring to a state court decision. While Judge Battani may have determined that the post-1992 changes violate

5

the *Ex Post Facto* Clause, this court must still determine whether the state court's decision that they do not is contrary to or an unreasonable application of clearly established Federal law.

"'[C]learly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). Such law can only be determined through an examination of the holdings of the Court, as opposed to its *dicta*. *Williams v. Taylor*, 529 U.S. 362, 412 (2000). "Nevertheless, an explicit statement by the Supreme Court is unnecessary; rather, the legal principles and standards flowing from Supreme Court precedent also qualify as 'clearly established law.'" *Lakin v. Stine*, 431 F.3d 959, 961 (6th Cir. 2005).

The *Ex Post Facto* Clause of the Constitution forbids the government from passing any law "which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed." *Weaver v. Graham*, 450 U.S. 24, 28, 101 S. Ct. 960, 964 (1981) (internal quotation omitted). The purposes of the clause are to provide fair warning about new punishments and to discourage arbitrary and oppressive legislation. *Id.* at 28, 101 S. Ct. at 964. "To fall within the *ex post facto* prohibition, two elements must be present: (1) the law must apply to events occurring before its enactment, and (2) it must disadvantage the offender affected by it." *United States v. Reese*, 71 F.3d 582, 585 (6th Cir. 1995), *cert. denied*, 518 U.S. 1007 (1996). The United States Supreme Court further explained the proper standard for determining whether an offender is disadvantaged by a law:

> [T]he focus of the *ex post facto* inquiry is not on whether a legislative change produces some ambiguous sort of "disadvantage," nor . . . on whether an amendment affects a prisoner's "opportunity to take advantage of provisions for early release," but on whether any such change alters the definition of criminal conduct or increases the penalty by which a crime is punishable.

*California Dept. of Corrections v. Morales*, 514 U.S. 499, 506 n.3, (1995) (citation omitted).

In *Morales*, the Supreme Court considered whether a post-sentencing change to parole procedures constituted the type of change in the law subject to analysis under the *Ex Post Facto* Clause. The Court declined to adopt an interpretation of the Clause that would "forbid[ ] any legislative change that has any conceivable risk of affecting a prisoner's punishment." *Id.* at 508. Instead, the Court inquired whether a change in the law "produced a sufficient risk of increasing the measure of punishment attached to the covered crimes." *Id.* at 509. A "sufficient risk of increased punishment" involves more than "some ambiguous sort of disadvantage" to an inmate. *Id.* at 506 n. 3.

The Supreme Court has recognized that discretionary parole systems, such as Michigan's, by their nature and design, are fluid and continually influenced and redefined based upon new information regarding the wisdom of paroling offenders with certain histories, personal and criminal. *Garner v. Jones*, 529 U.S. 244, 253 (2000). This fluidity does not render the parole system violative of the *Ex Post Facto* Clause. The Court explained:

> The idea of discretion is that it has the capacity, and the obligation, to change and adapt based on experience. New insights into the accuracy of predictions about the offense and the risk of recidivism consequent upon the offender's release, along with a complex of other factors, will inform parole decisions.

*Id.*

The Supreme Court's decisions in *Garner* and *Morales* do not clearly establish that changes to a parole scheme such as those effected in Michigan post-1992 violate of the *Ex Post Facto* Clause. While a reasonable jurist could conclude, and, in the class-action lawsuit, *did* conclude, that the changes violated the *Ex Post Facto* Clause, it was not unreasonable for the state court to reach a contrary conclusion. In fact, other judges in this district ruling on habeas petitions have held that the post-1992 changes did *not* violate the *Ex Post Facto* Clause. *See Maile v. Lafler*, No. 04-CV-74806, 2006 WL 229876 (E.D. Mich. Jan. 30, 2006) (Tarnow, J.); *Rouse v. Lafler*, No. 06-10724, 2007 WL 4239209, (E.D. Mich. Dec. 3, 2007) (Duggan, J.); *Moore v. Jackson*, No. 04-cv-72344 (E.D. Mich. Feb. 14, 2005) (Friedman, J.). These decisions support a finding that there was no clearly established Federal law which would compel a finding that Michigan's 1992 changes violated the *Ex Post Facto* Clause.

Because Supreme Court precedent provides no clear answer to the question whether changes to a parole board's procedures and practices of the type at issue here violate the *Ex Post Facto* Clause, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'" *Carey v. Musladin*, 549 U.S. 70, __, 127 S. Ct. 649, 654 (2007) (*quoting* 28 U.S.C. § 2254(d)(1)).

Moreover, even if Petitioner could establish that he is entitled to relief under § 2254, the court finds that resentencing would be inappropriate. The gravamen of the *ex post facto* claim in Petitioner's habeas petition and in the class-action complaint is that the post-1992 changes resulted in a failure to meaningfully consider for parole those serving parolable life sentences. In this case, the sentencing judge, the Honorable Gordon W. Britten, states in many letters and affidavits that it was his understanding

8

that Petitioner would be eligible for parole after serving ten years.[3] (*See* 9/30/03 Affidavit of Gordon W. Britten; 5/2/02 Letter from Judge Britten to Michigan Parole Board.) The relief fashioned by Judge Battani in the class-action matter adequately addresses this issue by requiring prompt personal parole review in accordance with the laws, policies, procedures and applying the standards in place prior to 1992. Even assuming an *ex post facto* violation warranting habeas relief, the court finds the relief afforded by Judge Battani to be appropriate and sufficient. It appears that Petitioner received approximately fifty misconduct tickets over the course of one three-year period. Requiring resentencing would improperly allow Petitioner to bypass consideration of his record during incarceration. Accordingly, the court denies habeas corpus relief.

### III. CONCLUSION

The court finds that Petitioner has not shown that the state court's decision that his rights under the Constitution were not violated by the parole board's failure to release him on parole was contrary to or an unreasonable application of Supreme Court precedent. Moreover, Petitioner has not shown that he is entitled to resentencing. Accordingly,

---

[3] Petitioner argues that the court should conduct an evidentiary hearing to allow him to present testimony regarding the sentencing judge's "original intent" at the time of sentencing. The court finds an evidentiary hearing unnecessary. The record reveals no ambiguity about the intent of the sentencing judge at that time that would require additional exploration. Further, the court reviewed this record and rejected Petitioner's argument about Judge Britten's intent at sentencing: "it appears to this court that Judge Britten's argument for a reduced period of incarceration some thirty years post-sentence is motivated less by an attempt to enforce a sentence he originally intended to impose, and more by a revised understanding of the nature of the crime based upon later-acquired information." (12/19/07 Order at 9, footnote omitted.)

9

IT IS ORDERED that the petition for a writ of habeas corpus [Dkt. # 1] is DENIED and the matter is DISMISSED WITH PREJUDICE. A separate judgment will issue.

          S/Robert H. Cleland
          ROBERT H. CLELAND
          UNITED STATES DISTRICT JUDGE

Dated: April 30, 2008

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, April 30, 2008, by electronic and/or ordinary mail.

          S/Lisa Wagner
          Case Manager and Deputy Clerk
          (313) 234-5522

S:\Cleland\JUDGE'S DESK\C2 ORDERS\04-74846.TOWNSEND.DenialAfterShowCause.MBC.wpd

10